**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PROASSURANCE SPECIALTY
INSURANCE COMPANY, INC.,

      Plaintiff,

v.                                                                    Civ. No. 1:19-cv-00691 MIS/SCY

FAMILYWORKS, INC.; CLARENCE
GARCIA; DEBBIE GARCIA; ACADIA
HEALTHCARE COMPANY, INC.; YOUTH
AND FAMILY CENTERED SERVICES OF
NEW MEXICO, INC. d/b/a DESERT HILLS;
IRENE HARRIS, as parent and Guardian
ad Litem of J.H., a minor; JOSEPH F. TORREZ,
as Guardian ad Litem of M.M., a minor;
LINDSEY R. FOOKS, as Guardian ad Litem of
G.S., a minor; ALISON ENDICOTT-QUINONES,
as Guardian ad Litem of L.D., a minor; and
RACHEL HIGGINS, as Guardian ad Litem of
J.H., a minor,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant Rachel Higgins' Motion for

Summary Judgment (ECF No. 52); Defendant Familyworks, Inc.'s Motion for Summary

Judgment in Favor of Defense and Indemnity Coverage and Finding as a Matter of Law

Rescission of Policy and Reporting Endorsement Is Not Warranted (ECF No. 72); and all

associated briefing, ancillary motions, and evidentiary disputes. As set forth below, the

motions for summary judgment will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff ProAssurance Specialty Insurance Company, Inc. ("ProAssurance") brings

this declaratory judgment action pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil

Procedure 57. ECF No. 38. The issue in controversy is whether Defendant Familyworks, Inc. ("Familyworks") is entitled to insurance coverage for claims relating to the sexual abuse of minor foster children in four underlying state court actions.

## I.    The Policies

Familyworks purchased its first insurance policy from ProAssurance in April 2014. At that time, Familyworks was licensed by the New Mexico Children, Youth, and Families Department ("CYFD") to provide treatment foster care services.[1]  Although the policy did not renew automatically,[2] Familyworks continued to purchase insurance coverage from ProAssurance each year up to and including 2018.

The provisions of the insurance policies purchased by Familyworks from 2014 through 2018 were, generally, as follows. Each policy was titled "Social Services Entity Liability Policy" and provided two kinds of coverage: General Liability and Professional Liability. ECF No. 100.[3] The General Liability Coverage Part protected Familyworks against liability for bodily injury, property damage, personal injury, and advertising injury, and was issued on an "occurrence" basis, meaning it provided coverage for injury or damage that occurred during the policy period with no limitation on when claims could be reported. ECF No. 100 at 17–23; *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3 (1978).

---

[1] A "treatment foster care provider" is "a foster care provider licensed by a child placement agency to provide intensive therapeutic support, intervention and treatment for a child who would otherwise require a more restrictive placement." N.M. Code. R. § 8.26.4.7(JJ).

[2] Each policy provided, specifically, that neither Familyworks nor ProAssurance was under any obligation to renew. ECF No. 100 at 13. Familyworks was required to complete ProAssurance's renewal application each year in order to be considered for renewal. *Id.*

[3] All policies issued to Familyworks by ProAssurance were substantively identical. For ease of reference the Court cites only to the final policy, which was issued in 2018. *See* ECF No. 100.

The Professional Liability Coverage Part applied to damages resulting from "professional incidents," defined in the policy as "any negligent act, error or omission in the furnishing of professional services by the insured or by any person acting under the personal direction, control or supervision of the insured." ECF No. 100 at 10, 25–27. Exclusion (D) to the Professional Liability Coverage Part specifically barred coverage for "[l]iability arising in whole or in part out of sexual activity." *Id*. at 25. However, the policies included a Sexual Misconduct Endorsement, which "modifie[d] the Professional Liability Coverage Part to provide limited coverage for claims of negligence arising out of alleged sexual misconduct." *Id*. at 36. Professional Liability coverage was issued on a claims-made basis and, therefore, covered all claims reported during the policy period so long as the underlying "professional incident" occurred on or after the retroactive date of April 1, 2000. *Id*. at 6, 25; *Barry*, 438 U.S. at 535 n.3.

The Professional Liability Coverage Part also contained a Reporting Endorsement Provision that gave Familyworks "the right," after termination of insurance and upon the payment of an additional premium, "to have issued a Reporting Endorsement providing for an extended reporting period." ECF No. 100 at 27. This right could be exercised no later than thirty days after termination. *Id*. Familyworks was entitled to purchase a Reporting Endorsement if the policy was not renewed or if it was cancelled "for any reason other than non-payment of premium or fraud." *Id*. Any professional incidents first reported during the extended reporting period were deemed to have been reported on the last day of the policy period. *Id*.

The policies also provided, applicable to both coverage parts, that:

Each **insured** shall notify us in writing, within thirty (30) days after the occurrence of any one or more of the following:

      [ . . . ]

4.    Such **insured's** license to practice the insured's profession or otherwise deliver social services of any type, is revoked, suspended, surrendered or limited in any respect, or such **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialling committee in a proceeding seeking to terminate, revoke or limit such insured's employment or privilege to practice[.]

      [ . . . ]

If any **insured** fails to comply with any obligations under this **policy**, our obligations to such **insured** under this **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

ECF No. 100 at 12.

In total, Familyworks purchased five Social Services Entity Liability Policies from ProAssurance, four of which are now at issue: Policy Number SFC9627415 ("2015–2016 Policy"); Policy Number SFC9627416 ("2016–2017 Policy"); Policy Number SFC9627417 ("2017–2018 Policy"); and Policy Number SFC9627418 ("2018–2019 Policy").

## II.    Licensing Sanctions

On July 2, 2018, during the 2017–2018 Policy period, CYFD issued a letter to Familyworks titled "IMPOSITION OF EMERGENCY SANCTION: Treatment Foster Care Admissions Hold and Directed Corrective Action Plan." ECF No. 38-1. The letter stated that Familyworks had been found noncompliant with various certification and licensing requirements and restricted Familyworks from accepting any new clients until the identified deficiencies were corrected and approved. *Id*. at 8. The emergency sanctions imposed were "Admissions Hold" and "Probation with Restricted Admissions Hold," pursuant to NMAC §§ 7.20.11.12.A(5) and 8.26.5.29(G)(2), respectively. *Id*.

On July 16, 2018, CYFD sent a second letter to Familyworks with the subject line "IMPOSITION OF EMERGENCY SANCTION: Revocation of Treatment Foster Care License and Certification." ECF No. 77-3. The letter identified numerous violations of licensing and certification requirements and revoked Familyworks' treatment foster care license effective August 30, 2018. *Id*. at 17.

On July 23, 2018, CYFD sent Familyworks a third letter titled "IMPOSITION OF EMERGENCY SANCTION: Revocation of Treatment Foster Care License and Certification Revised to September 21, 2018." ECF No. 72-9. The letter stated:

> Revocation of Familyworks [sic] Treatment Foster Care license and certification has been revised to September 21, 2018, in order to ensure a safe and orderly transition for all TFC clients.

*Id*. No further revisions were made, and Familyworks' license was revoked on September 21, 2018.

## III.   Application for Renewal

Familyworks applied to renew its coverage with ProAssurance on August 16, 2018, following receipt of all three letters but before its license was actually revoked. ECF No. 72-8. The application was completed by Familyworks CEO Brock Wolff. In response to two questions asking, respectively, whether Familyworks anticipated any claims and whether any incidents or claims of abuse had been reported, Mr. Wolff checked "Yes" and explained:

> A Treatment Foster Care Family is currently under investigation [f]or alleged abuse and/or neglect.
> Family Works has revoked their foster care license and has no further contact with the family.

*Id*. at 3, 4. Familyworks did not disclose the Admissions Hold or the impending revocation of its own license. In response to the question, "Is the applicant/facility and all professional employees licensed in accordance with applicable state and federal laws?" Familyworks responded, "Yes." *Id*. at 2.

On September 1, 2018, ProAssurance underwriter Chrissy Anthony sent an email marked "URGENT" to Georgina C. Serio, Managing Director of the insurance broker Beecher Carlson. ECF No. 72-11 at 2. Ms. Anthony referenced the "investigation for alleged abuse and/or neglect" disclosed on Familyworks' Application, stating: "We will need a copy of the incident report with the date and circumstances surrounding the incident to complete our underwriting renewal review of the account." *Id*. On the same day, Ms. Serio replied on behalf of Familyworks:

> We do not have a copy of an incident report. Unfortunately, the Attorney General's office came into our facility with a subpoena and confiscated records. The allegation is that a family abused the children they were fostering but we have not been told anything more specific outside that.

*Id*. at 1. Ms. Anthony was nevertheless able to obtain management approval to offer renewal terms. *Id*. A new policy was issued to Familyworks for the period of September 1, 2018, through September 1, 2019 ("the 2018–2019 Policy"). *See* ECF No. 72-12.

## IV.    Cancellation and Purchase of Reporting Endorsement

On September 27, 2018, Ms. Serio emailed to inform ProAssurance that Familyworks had "closed all business operations" and to request: "Please cancel the policy effective 9/21/2018 and provide us with a quote for unlimited tail coverage." ECF No. 72-13. A Reporting Endorsement was issued with an effective date of

September 21, 2018, in consideration of an additional $361,890.00 premium. ECF No. 100 at 43. The extended coverage of the Reporting Endorsement meant that Professional Liability claims[4] reported during the extended period, after cancellation of the 2018–2019 Policy, would be deemed to have been reported on the last day of the 2018–2019 Policy period.

## V.    State Court Actions

Following the revocation of Familyworks' license, the cancellation of the 2018–2019 Policy, and the purchase of the Reporting Endorsement, four lawsuits were filed against Familyworks in New Mexico state court based on the alleged sexual abuse of foster children by Defendants Clarence and Debbie Garcia.[5] The first suit was filed on behalf of minor J.H. in the First Judicial District Court on October 16, 2018 (Case No. D-101-CV-2018-02989). Three additional suits were filed in the First Judicial District Court on March 20, 2019, on behalf of minors M.M., G.S., and L.D. (Case Nos. D-117-CV-2019-00135, D-117-CV-2019-00136, D-117-CV-2019-00137, respectively).

All four suits allege that Familyworks was negligent in retaining and supervising the Garcias and in failing to ensure the minors' safety. All four suits include claims for

---

[4] Although the Reporting Endorsement also purported to modify the General Liability Coverage Part, *see* ECF No. 100 at 43, the provision was without effect. Because the General Liability Coverage Parts of all policies provided for unlimited reporting of occurrences that took place during the policy period, no extension of the reporting period could be made.

[5] Both Defendant Acadia Healthcare Company, Inc. ("Acadia") and Defendant Youth and Family Centered Services of New Mexico, Inc. ("Desert Hills") filed responses objecting to the undisputed material facts in paragraphs 1 and 3 of Defendant Higgins' motion. ECF Nos. 54, 55. The facts to which they object are that (1) Defendant J.H. filed a negligence action in state court against Defendant Familyworks, and (2) the state court complaint contained various allegations, which are quoted in Defendant Higgins' brief. ECF No. 52 at 2, 3–6. The Court finds no plausible basis for any party to dispute these facts, particularly since the existence and allegations of the underlying state court suits are subject to judicial notice. *See, e.g., McNees v. Ocwen Loan Servicing*, 2018 U.S. Dist. LEXIS 15704, at *10 (D. Colo. Jan. 31, 2018) (citing *Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006)). The objections are therefore overruled.

punitive damages. It is undisputed that ProAssurance has so far provided Familyworks with a defense in each action, under the extended coverage of the Reporting Endorsement and pursuant to a reservation of rights.[6]

## VI.    Declaratory Judgment Action

ProAssurance filed this declaratory judgment action on July 20, 2019. ECF No. 1. An Amended Complaint was filed May 14, 2020. ECF No. 38. ProAssurance seeks declarations that (1) no coverage exists under the Reporting Endorsement because it is *void ab initio* and may be rescinded, and (2) no coverage exists under the General Liability Coverage Part of any of the policies because the alleged sexual abuse does not constitute an "occurrence" within the meaning of the policies and because an exclusion bars coverage. *Id*.

Defendant Rachel Higgins ("Higgins") filed a motion for summary judgment on August 18, 2020, on behalf of minor J.H. ECF No. 52. Familyworks filed its summary judgment motion on December 17, 2020. ECF No. 72. In the course of briefing these dispositive motions the parties have engaged in numerous evidentiary and procedural disputes, including but not limited to ProAssurance's Opposition to Familyworks' Partial Joinder in Rachel Higgins' Motion for Summary Judgment (ECF No. 63); ProAssurance's Evidentiary Objections to Excerpts from the Depositions of Velia Martinez and Chantelle Burton (ECF No. 77); and Familyworks' Motion to Strike Sham Declaration of Chantelle Burton (ECF No. 85). All motions and disputes are now before the Court.

---

[6] A reservation of rights "enables an insurer to assert future defenses based on noncoverage under the policy." *Signature Dev. Cos. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1217 (10th Cir. 2000) (citing 14 *Couch on Ins.* § 202:38 (3d ed. 1996)).

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In applying the summary judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017).

**DISCUSSION**

**I.    Discretionary Exercise of Jurisdiction**

ProAssurance brings its claims pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which "confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980 (10th Cir. 2012). The court's exercise of jurisdiction is discretionary even where, as here, the plaintiff also alleges diversity of citizenship. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In determining whether to hear the claims, the court considers the following factors:

[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quoting *Allstate Ins.* Co. *v. Green,* 825 F.2d 1061, 1063 (6th Cir. 1987)).

In its "Partial Joinder in and Response in Support of" Higgins' motion, Familyworks urges the Court not to exercise its discretionary jurisdiction because coverage should be determined in the underlying state court actions.[7] ECF No. 56 at 9–10. Having considered all five *Mhoon* factors, however, the Court finds that they weigh in favor of exercising jurisdiction. A declaratory judgment by this Court would settle the coverage controversy and serve a useful, present purpose in clarifying ProAssurance's duty to defend and indemnify Familyworks against the underlying state court suits. There is no evidence to suggest—and Familyworks does not assert—that ProAssurance brought its federal claims merely for the purpose of "procedural fencing." ProAssurance is not named as a party to the underlying state court proceedings, and those proceedings will not resolve the issue of coverage. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1183

---

[7] In light of Familyworks' later-filed and substantively similar Motion for Summary Judgment (ECF No. 72), the partial joinder and response is arguably moot. Familyworks' argument about discretionary jurisdiction was not reprised in the later motion. However, the Court finds that jurisdiction is properly addressed in any action for declaratory relief. In addition, because all other substantive arguments made in the partial joinder and response were repeated in Familyworks' later and properly-filed motion, the Court finds that the other parties' objections to the joinder (ECF Nos. 63, 64) are moot. Finally, because discovery in this case has since concluded and Familyworks filed its own dispositive motion, Familyworks' request under Fed R. Civ. P. 56(d) to defer ruling, *see* ECF No. 56 at 23, is clearly moot.

(10th Cir. 2002) (in assessing the second and fifth *Mhoon* factors, the court should consider "the similarity of the proceedings").[8] Likewise, this Court's determination of insurance coverage would not interfere with state court proceedings or increase friction between federal and New Mexico state courts. The claims at issue do not demand factual determinations contrary to those alleged in the underlying state court complaints. *C.f. Found. Res. Ins. Co. v. Mullenix*, 642 P.2d 604, 606 (N.M. 1982) (holding that a secondary action for declaratory judgment was inappropriate where the insurance company sought "to establish actual facts either contrary to or not alleged" in the underlying complaint).[9] In consideration of all these factors, the Court finds it would be inappropriate to decline the exercise of jurisdiction.

## II.    Defense Versus Indemnification

Under New Mexico law,[10] "an insurer's duty to defend is independent of its duty to insure. It is determined not by the actual underlying facts of the transaction, as the coverage issue is, but by the allegations of the injured party's complaint." *Mhoon*, 31 F.3d at 985 (citing *Mullenix*, 642 P.2d at 604). Accordingly, "only where the allegations in the complaint fall outside the scope of the coverage afforded by the insurance policy may the

---

[8] Moreover, since the parties have now conducted discovery and engaged in extensive motions practice, the pursuit of alternative state remedies would likely involve considerable delay and, therefore, be less satisfactory and less effective than the present action in resolving the question of coverage. However, the Court's decision does not depend on this consideration.

[9] Similarly, Familyworks' citation to *State Farm Fire & Cas. Co. v. Ruiz*, 36 F. Supp. 2d 1308, 1315 (D.N.M. 1999), does not persuade the Court that jurisdiction should be declined. There the court held that "an insurer who has in its possession facts contrary to or not pled in the complaint demonstrating that the policy does not cover the injury alleged must bring these facts to the attention of the trial court in the primary action." *Id.* ProAssurance is not a party to the state court actions—which involve Familyworks' tort liability, not its entitlement to insurance coverage—and ProAssurance does not appear to dispute any facts that will be decided in the underlying state court proceedings.

[10] The parties do not dispute that New Mexico's substantive law applies to determine coverage, as provided by the policies. *See* ECF No. 100 at 14 ("Governing Law").

insurer avoid its duty to defend." *Id*. The duty to indemnify, on the other hand, is "determined . . . by the actual underlying facts of the transaction"; mere allegations will not suffice. *Id*. To that end, the insurer's duty to indemnify is not ripe for adjudication until the insured's liability has been established in the underlying action. *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992); *Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451 F. App'x 745, 749 (10th Cir. 2011).

ProAssurance's Amended Complaint places both defense and indemnification at issue. ECF No. 38 at 11 (seeking a declaration that "ProAssurance has no further duty or obligation to provide a defense to Familyworks, Clarence Garcia, or Debbie Garcia").[11] The existence of four underlying state court actions, along with the general nature of their claims—and some, though not all, of their specific allegations—has been well established. ProAssurance's duty to defend is therefore clearly ripe for adjudication. However, it is not clear to this Court which, if any, of the underlying state court actions have been resolved, let alone what were their findings.[12]

No party has expressed the view that the coverage question can be finally resolved without reference to the outcome of the state court actions against Familyworks. The Court agrees that it cannot. The Court also declines to issue an advisory opinion with respect to indemnification, assuming the presence or absence of certain findings. *See* ECF No. 67 at 6 (urging the Court to make an "interim ruling"). Therefore, both summary

---

[11] ProAssurance's assertion that "it is a waste of time of the Court and counsel" for the Court to determine the duty to defend, ECF No. 62 at 14, is therefore puzzling.

[12] Familyworks contends that a determination of indemnification is not premature because "[t]here has already been a liability determination in one of the underlying lawsuits." ECF No. 87 at 7–8. But no findings or other documentation from that lawsuit were attached and no specific arguments were made with respect to its outcome.

judgment motions will be DENIED as premature as they relate to ProAssurance's duty to indemnify Familyworks. The Court considers only ProAssurance's duty to defend.[13]

## III.    General Liability Coverage

Both Higgins and Familyworks move for summary judgment on ProAssurance's second claim for a declaration of coverage under the General Liability Coverage Part. The Court will grant both motions with respect to defense. As set forth above, the motions are denied with respect to indemnification.

### a.    Construction of Insurance Contracts

The law of New Mexico imposes principles of insurance contract construction "that favor both the insured and the avowed purpose of insurance, the provision of coverage." *Sanchez v. Herrera*, 783 P.2d 465, 469 (N.M. 1989). "The obligation of the insurer is a question of contract law and will be determined by reference to the terms of the insurance policy." *Knowles v. United Servs. Auto Ass'n*, 832 P.2d 394, 396 (N.M. 1992). Accordingly, "policies that are not ambiguous and do not contravene public policy must be enforced as written." *N.M. Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737 (N.M. 1993). However, ambiguous terms in insurance contracts must be liberally construed in favor of the insured. *Id*.

Ambiguity exists if the contract language is "reasonably and fairly susceptible of different constructions." *Sanchez v. Herrera*, 783 P.2d at 469; *c.f. United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 648 (N.M. 2012) ("[A]n ambiguity does not exist merely

---

[13] The Court notes, however, that the legal questions involved in determining coverage do not otherwise differ between defense and indemnification. In other words, to the extent the allegations of the complaint are proven, the Court's findings about indemnification will not differ from those expressed herein in relation to defense.

because the parties hold competing interpretations about the meaning of a policy provision." (quotation omitted)). In resolving the ambiguity, "the test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean." *Phoenix Indem. Ins. Co. v. Pulis*, 9 P.3d 639, 646 (N.M. 2000) (quoting *Western Commerce Bank v. Reliance Ins. Co.*, 732 P.2d 873, 875 (N.M. 1987)). If the reviewing court is "alerted to an interpretation supporting coverage to which the language of the policy is reasonably susceptible and which does not violate public policy, [it] generally will construe the provision against the insurer and in favor of coverage." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 46 P.3d 1264, 1267 (N.M. Ct. App. 2002). To that end, "[i]t is unnecessary to show that a construction against the insurer is more logical than a construction against the insured, so long as both constructions are reasonable." *United Nuclear Corp.*, 285 P.3d at 648 (quotation omitted).

   b.   *Definition of "Occurrence"*

   The General Liability Coverage Part of each policy applies to "bodily injury or property damage which occurs during the policy period and is caused by an occurrence." ECF No. 100 at 17. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that takes place at or from a scheduled facility."[14] *Id*. at 9. Although the term "accident" is not defined in the policy, the New Mexico Supreme Court has defined it, according to common usage, as "an unlooked for mishap, or an untoward event which is not expected or designed."

---

[14] The "scheduled facility" component of this definition is not in dispute, *see* ECF No. 62 at 5 n.1, nor is the proposition that the alleged victims suffered "bodily injury," *see* ECF No. 76 at 4.

*O'Rourke v. New Amsterdam Casualty Co.*, 362 P.2d 790, 792 (N.M. 1961) (quotation omitted).

ProAssurance argues that the sexual abuse on which the underlying suits are based was not an "accident" and, therefore, did not constitute an "occurrence." ProAssurance concedes that Clarence Garcia's third-party conduct does not, in and of itself, preclude coverage to Familyworks under the definition of "occurrence." *See* ECF No. 62 at 5. However, ProAssurance argues that coverage is barred because Familyworks' own undisputed conduct was not accidental. Specifically, as to the minor J.H., ProAssurance argues "[t]he intentional placement of J.H. with the Garcias by FW [Familyworks], and FW's intentional act of leaving her with the Garcias until late 2016, were not occurrences . . . even though FW may not have foreseen or intended that J.H. would be sexually abused by Clarence, as alleged." ECF No. 62 at 8.

It is well established under New Mexico law that harm resulting from an insured's negligent conduct may constitute an "accident" within the meaning of an insurance policy. In *Scott v. New Empire Ins. Co.*, 400 P.2d 953 (N.M. 1965), the court found that the plaintiff's decedent was entitled to coverage for "accidental death" even though he was driving at a high rate of speed before the fatal collision. Although the decedent received a traffic ticket for speeding on the same night and his passenger complained about the speed of his driving, the court found no evidence that the result—i.e., his death—was "voluntarily self-inflicted." *Id.* at 956. In other words, although the decedent's acts of driving the car and exceeding the speed limit were presumably intentional, he was nevertheless entitled to coverage because the result, i.e., the fatal collision, was unintended.  The term "accident" has also been applied to unintended damage caused

by negligent workmanship. *See King v. Travelers Ins. Co.*, 505 P.2d 1226, 1229 (N.M. 1973) ("[A]n insurance policy designed to compensate for damages suffered by 'accidental means' is no less effective when the damages result from negligence."); *Pulte Homes of N.M., Inc. v. Ind. Lumbermens Ins. Co.*, 367 P.3d 869, 877–78 (N.M. Ct. App. 2015) (holding that faulty workmanship installing windows and doors constituted an "occurrence," defined as an "accident").

The Court concludes that the underlying complaints against Familyworks allege an "occurrence" within the meaning of the policies. Although the state court plaintiffs allege that Familyworks intentionally placed the children with the Garcias, none allege that Familyworks intended the resulting sexual abuse. *See* ECF Nos. 52-1, 72-19, 72-20, 72-21. The complaint by J.H. asserts claims of negligence and vicarious liability against Familyworks. ECF No. 52-1. The complaints by M.M., G.S., and L.D. assert claims of negligence and civil conspiracy. ECF Nos. 72-19, 72-20, 72-21. To the extent ProAssurance conflates Familyworks' intent to take certain actions (placing the minor children, retaining the Garcias) with Familyworks' intent to cause the harm (the alleged sexual assaults), the Court is unpersuaded. Whether Familyworks intended to place minor children with the Garcias or retain them as foster parents is immaterial to whether the alleged abuse constituted an "occurrence." Familyworks' state of mind is relevant only with respect to the asserted harm.[15] *See Scott*, 400 P.2d at 956.

---

[15] Although the reasonable expectations of the insured are not determined by reference to the case law of other jurisdictions, this holding is firmly in line with the decisions of other state courts. *See, e.g., Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 432 (Ohio 2009) ("[W]hen a liability insurance policy defines an 'occurrence' as an 'accident,' a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an 'occurrence.'"); *Hanover Ins. Co. v. Crocker*, 688 A.2d 928, 930 (Me. 1997) (finding sexual abuse constituted an "occurrence" where the insured was negligent in failing to prevent her daughter's sexual abuse, but did not expect or intend the harm); *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842

A more difficult question is presented by the state court plaintiffs' claims for punitive damages. These allege that Familyworks acted maliciously, recklessly, willfully and/or wantonly in placing the minor children with the Garcias and failing to adequately ensure their safety. *See*, *e.g.*, ECF Nos. 52-1 at ¶ 159; 72-19 at ¶152; 72-20 at 152; 72-21 at ¶ 155. Although these terms do not necessarily connote an *intent* to harm, they certainly imply a state of mind more culpable than negligence.

At this time, however, only ProAssurance's duty to defend is before the Court. The state court plaintiffs' principal claims are for negligence and their allegations do not "clearly fall outside the provisions of [the] professional liability insurance policies." *N.M. Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737 (N.M. 1993); *see also Am. Gen. Fire & Casualty Co. v. Progressive Casualty Co.*, 799 P.2d 1113, 1116 (N.M. 1990) ("The duty of an insurer to defend arises from the allegations on the face of the complaint . . . that brings it *arguably* within the scope of coverage." (emphasis added)). The Court therefore finds that the allegations constituted an "occurrence" within the meaning of the policies for purposes of ProAssurance's duty to defend.[16]

---

F. Supp. 1151, 1157–58 (W.D. Ark. 1994) (holding that an employee's sexual molestation of children constituted an "occurrence" because it was "unexpected or unanticipated from the standpoint of the insured").

[16] In reaching this and all other determinations, the Court does not consider the testimony of former ProAssurance employees Chantelle Burton or Velia Martinez. The insurer's intentions and understanding with respect to ambiguous policy terms are immaterial to their construction. *Phoenix Indem. Ins. Co.*, 9 P.3d at 646 ("[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean."). The Court considers only material facts on summary judgment. *Anderson*, 477 U.S. at 248. ProAssurance's separately-filed evidentiary objections on the basis of irrelevance and immateriality, *see* ECF No. 77, are therefore moot. *See*, *e.g.*, *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("A court can award summary judgment only when there is no genuine dispute of *material* fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant.").

c.    *Exclusion (m)*

ProAssurance next argues that coverage is barred by Exclusion (m) of the General Liability Coverage Part, which excludes coverage for "[l]iability arising out of any willful, wanton, fraudulent, dishonest, criminal, reckless, intentionally wrongful, or malicious act or omission." ECF No. 100 at 19. ProAssurance contends Exclusion (m) bars coverage because (1) Clarence Garcia's alleged sexual acts were "criminal" and "intentionally wrongful" and (2) Familyworks' own alleged conduct was malicious, willful, and reckless. ECF Nos. 60 at 17–19; 76 at 15–17. These arguments present two distinct inquiries.

First, the Court finds coverage is not barred merely by virtue of Clarence Garcia's criminal or intentional acts. Whether Exclusion (m) bars coverage based on a third-party contractor's criminal or intentional acts, or whether it turns solely on the insured's state of mind, is at the very least ambiguous. In *Computer Corner*, the New Mexico Court of Appeals construed an intentional acts exclusion where a Computer Corner technician, proceeding under another employee's faulty instructions, intentionally wiped a customer's hard drive and caused his data to be lost. 46 P.3d at 1267. The court remarked that "Computer Corner, not the technician, was 'the insured' whose state of mind was at issue" and found that the harm "was neither expected nor intended from Computer Corner's viewpoint." *Id*. at 1267–68. Consequently, the trial court erred "by equating the technician's state of mind with Computer Corner's state of mind" and its decision was reversed. *Id*. at 1267. In *Safeco Ins. Co. v. McKenna*, the New Mexico Supreme Court denied coverage to the insured plaintiff based on his own intentional acts of battery but carefully distinguished other cases in which the insured seeking coverage acted negligently, rather than intentionally. 565 P.2d 1033, 1036–37 (N.M. 1977). In light of this

precedent and the guiding principle that "exclusionary clauses must be narrowly construed," *Knowles*, 832 P.2d at 398, the Court finds that Defendants have proffered a reasonable construction of Exclusion (m). Exclusion (m) must therefore be so construed, *see United Nuclear Corp.*, 285 P.3d at 648, and will bar coverage only if *Familyworks* acted with the requisite intent. The intentionality of Clarence Garcia's acts is immaterial.

The more difficult question is whether Familyworks is entitled to coverage in light of several allegations of "intentional" and "knowing" wrongdoing in the underlying state court complaints. Based on the plain language of the policy, it appears that Exclusion (m) will preclude coverage in the event of a determination that Familyworks acted willfully, wantonly, recklessly, maliciously, or in an intentionally wrongful manner. On the present motions, however, the Court decides only the duty to defend. Because, once again, the state court plaintiffs' principal claims are for negligence and/or vicarious liability, the Court finds their allegations to fall "arguably" within the scope of coverage.[17] *Am. Gen. Fire & Casualty*, 799 P.2d at 1116. Should Familyworks be found liable for the underlying claims, ProAssurance's duty to indemnify will be determined in accordance with the law set forth above.

   d.   *Exclusion (i)*

Finally, ProAssurance argues that General Liability coverage is precluded by Exclusion (i), which excludes from coverage "[b]odily injury or property damage due to the rendering of or failure to render professional health care services." ECF No. 100 at 18.

---

[17] With respect to Exclusion (m) specifically, and General Liability coverage more generally, ProAssurance apparently concedes a duty to defend. *See* ECF No. 60 at 19 ("Higgins has presented a compelling case that FW is entitled to a defense from ProAssurance."). Nevertheless, ProAssurance has neither amended its complaint nor entered a stipulation to this effect. The controversy therefore remains live.

"Professional health care services" are not defined in the policies. "Professional services," conversely, are defined as "services rendered by an insured or by any person acting under the personal direction, control or supervision of the insured on behalf of and within the scope of the profession or business of the policyholder[.]" ECF No. 100 at 9. The Court concludes that ProAssurance, as the drafter, intended to distinguish between the two terms. While Familyworks—and, by extension, the Garcias—certainly engaged in professional services, the Court does not find that they engaged in professional *health care* services. As a matter of common usage, "health care services" do not include foster care. *See Fowler v. First Nat'l Life Ins. Co.*, 378 P.2d 605, 607 (N.M. 1963) ("[W]ords, phrases or terms will be given their ordinary meaning unless by definitions in the policy or context in which the word is used requires some other meaning be given."); *see also* N.M. Stat. § 41-5-3(A) (2018) (in New Mexico's Medical Malpractice Act, "health care provider" denotes a person or organization licensed to provide services "as a doctor of medicine, hospital, outpatient health care facility, doctor of osteopathy, nurse anesthetist or physician's assistant"). Moreover, to the extent there is any ambiguity the policy must be construed in favor of the insured. *N.M. Physicians*, 860 P.2d at 737. The Court finds that Exclusion (i) does not apply and, accordingly, both motions for summary judgment are GRANTED as to ProAssurance's duty to defend under the General Liability Coverage Part of the relevant policies.

## IV.   Professional Liability Coverage

Familyworks additionally moves for summary judgment on ProAssurance's first claim for relief, seeking a determination that ProAssurance must provide Professional

Liability coverage[18] for the state court claims. The motion will be granted as to ProAssurance's duty to defend.

    *a.*    <u>*Applicable Policy*</u>

As a preliminary matter, the Court finds that any Professional Liability coverage in this case arises under the Reporting Endorsement effective September 21, 2018. ECF No. 100 at 43. The Reporting Endorsement modified the Professional Liability Coverage Part of Policy Number SFC9627418 (the 2018–2019 Policy), which in turn provides:

> If we provide a **reporting endorsement**, any **professional incident** first **reported** during the **extended reporting period** will be deemed to have been **reported** on the last day of the policy period, provided that the **professional incident** occurred before the end of the **policy period** (but not before the **retroactive date**).

*Id*. at 27. Therefore, any claim against Familyworks reported on or after September 21, 2018, is deemed to have occurred on the last day of the 2018–2019 Policy period.

Familyworks contends that Professional Liability coverage for the state court claims derives from the 2017–2018 Policy, rather than the Reporting Endorsement, because Familyworks "reported" the claims in August 2018. ECF No. 72 at 19. Specifically, Familyworks stated twice in its August 16, 2018 Application that: "A Treatment Foster Care Family is currently under investigation [f]or alleged abuse and/or

---

[18] ProAssurance urges in its response brief that no coverage is available under the Professional Liability Coverage Part; rather, because Exclusion (D) eliminates coverage for "[l]iability arising in whole or in part out of sexual activity," coverage would arise only under the Sexual Misconduct Endorsement. ECF Nos. 76 at 18–19; 100 at 25, 36–37. By its own terms, the Sexual Misconduct Endorsement "modifies the Professional Liability Coverage Part." ECF No. 100 at 36. The Court therefore finds that any coverage provided pursuant to the Sexual Misconduct Endorsement is properly described as Professional Liability coverage.

neglect. / Family Works has revoked their foster care license and has no further contact with the family." ECF No. 72-8 at 3, 4.

> The policies define "reported" as follows:

> **Report**, **reported**, and **reporting** mean the receipt by our Claims Department, from an **insured** or its representative, of written notice of a claim or suit which has been made or filed, or which an insured reasonably expects to be made or filed, under any Coverage Part providing coverage on a claims-made basis, specifying (1) the date, time, and place of the **professional incident**, **occurrence**, or medical payment to which this insurance applies, (2) a description of the **professional incident**, **occurrence**, or medical payment to which this insurance applies, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including treating physicians, and (5) the circumstances resulting in the **professional incident**, **occurrence**, or medical payment to which this insurance applies.

ECF No. 100 at 10. In light of this detailed and unambiguous definition, the Court finds that the statements made in Familyworks' Application were clearly insufficient to constitute "reporting" of a claim.[19] Therefore, no Professional Liability coverage may be had under the 2017–2018 Policy, and coverage turns instead on the 2018–2019 Policy as extended by the Reporting Endorsement.

---

[19] It is immaterial whether or not, as Familyworks claims, ProAssurance had "actual notice" of the claims. ECF No. 87 at 9. Under each policy issued to Familyworks by ProAssurance, Professional Liability coverage is provided for "any professional incident that (1) occurs on or after the retroactive date applicable to the insured and (2) is first reported during the policy period." ECF No. 100 at 2. Neither this provision nor the one defining "reported" is ambiguous. The provisions must be enforced as written, *see N.M. Physicians Mut. Liab. Co.* at 737, and the Court cannot impose a judicially created exception for situations in which the insurer had actual notice.

b.    _Sexual Misconduct Endorsement Exclusions_

In its response to Higgins' motion,[20] ProAssurance argues that coverage is barred by Exclusions (A), (B), and (C) to the Sexual Misconduct Endorsement. ECF No. 62 at 15, 21–22. The Sexual Misconduct Endorsement, which modifies the Professional Liability Coverage Part to provide limited coverage for claims of negligence arising out of sexual misconduct, incorporates the following exclusions:

> The Endorsement shall not apply and coverage under the **policy** shall not be provided to any individual who:
> A.  Engaged in or is alleged to have engaged in sexual misconduct or harassment;
> B.  Knowingly failed to prevent any sexual misconduct or harassment; or
> C.  Intentionally neglected to notify the proper authorities of any sexual misconduct or harassment.

ECF No. 100 at 36.

J.H.'s state court complaint alleges, inter alia, that Familyworks received a report of sexual misconduct by another child against Clarence Garcia but failed to remove J.H. from the home; that Familyworks placed J.H. in the Garcia household despite prior knowledge that Clarence Garcia had sexually abused foster children; and that Familyworks knew of the danger in placing J.H. with the Garcias. ECF No. 52 at 4–5. While there is no allegation that Familyworks engaged in sexual misconduct[21] or that

---

[20] Although Higgins' motion purports to relate only to ProAssurance's second claim ("For a Declaration of No Coverage Under General Liability Coverage Part of Any of ProAssurance's Policies"), ECF No. 38 at 8, it asserts specifically that the exclusions in the Sexual Misconduct Endorsement "do not preclude coverage." ECF No. 52 at 26. ProAssurance responded in opposition. ECF No. 62 at 14–17. The Court agrees that the Sexual Misconduct Endorsement relates only to Professional Liability coverage, but will nevertheless address the issue in deciding ProAssurance's duty to defend.

[21] ProAssurance contends that, according to J.H.'s allegations, Familyworks engaged in sexual harassment because it "consented to and facilitated the provision of birth control to J.H. in the summer of 2016" and aided Clarence Garcia's assaults by providing means and opportunity. ECF No. 62 at 21. Without more, the Court does not find that either of these allegations implicates Exclusion (A).

Familyworks' failure to notify the proper authorities was intentional, some of these allegations, if proven, might preclude coverage pursuant to Exclusion (B). As with the General Liability Coverage Part, however, the Court finds that the claims in J.H.'s complaint[22] are at least "arguably" within the scope of coverage, *Am. Gen. Fire & Casualty*, 799 P.2d at 1116, and that Exclusion (B) does not preclude ProAssurance's duty to provide a defense.

    *c.*   <u>*Rescission*</u>

    ProAssurance asserts its entitlement to rescission of the 2018–2019 Policy and Reporting Endorsement because (1) Familyworks failed to report a limitation on its license in violation of its policy obligations and (2) Familyworks misrepresented that it was "licensed in accordance with applicable state and federal laws" on the 2018 insurance Application. ECF No. 76 at 22–23.

    The Court does not find that Familyworks misrepresented its licensure status on the Application by checking "Yes." The question did not ask whether Familyworks was "fully licensed" or "licensed without limitation," but only whether it was "licensed." ECF No. 72-8 at 2. Despite the Admissions Hold and impending revocation, Familyworks technically remained "licensed" at the time of the Application. Conversely, the Court agrees with ProAssurance, based on the undisputed facts before it, that Familyworks failed to report a license limitation in accordance with its duties under the 2017–2018 Policy. *See* ECF No. 72-7 at 11 (obligation of the insured to notify ProAssurance in writing, within thirty days, if its license is "limited in any respect"). ProAssurance could therefore

---

[22] ProAssurance did not present a similar argument with respect to the other minor state court plaintiffs in its briefing. Therefore, the Court considers Exclusions (A), (B), and (C) only with reference to J.H.'s complaint.

make a plausible argument that its obligations to Familyworks under the 2017–2018 Policy terminated on August 1, 2018, thirty days after the Admissions Hold was imposed. *See id*.

However, Professional Liability coverage is not being sought pursuant to the 2017–2018 Policy because no claims were reported during that policy period. ProAssurance's claim therefore turns on the availability of rescission as a remedy. "As a general proposition, rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." *Prudential Ins. Co. v. Anaya*, 428 P.2d 640, 643 (N.M. 1967). "A representation or concealment of a fact is material if it operates as an inducement to the insurer to enter into the contract, where, except for such inducement, it would not have done so, or would have charged a higher premium." *Modisette v. Foundation Reserve Ins. Co.*, 427 P.2d 21, 20 (N.M. 1967). The question of materiality is ordinarily one of fact. *Id*.

The above determination, particularly the inquiry into whether ProAssurance would have refused to issue the 2018–2019 Policy and Reporting Endorsement had it been fully apprised of the facts, falls well outside the allegations of the underlying state court complaints.[23] It therefore does not implicate ProAssurance's duty to defend. Because a

---

[23] It appears, moreover, that a genuine dispute of material fact exists as to whether ProAssurance would have denied Familyworks' Application for the 2018–2019 Policy and declined to issue the Reporting Endorsement if it had been notified of the Admissions Hold and impending license revocation. Setting aside her disputed Declaration, ProAssurance underwriter Chantelle Burton testified at her deposition that "[w]e wouldn't have" written the 2018–2019 Policy if the emergency sanctions by CYFD had been disclosed. ECF No. 72-3 at 8, 60:5. Counsel subsequently asked whether ProAssurance would have written coverage "[i]f the State of New Mexico told Familyworks that they were permitted to operate up until September 21st, 2018," to which Ms. Burton replied, "They would possibly have had coverage up until X date. I mean, I don't know that without looking at all the dates." *Id*. at 9, 68:9–20. As to whether ProAssurance would have canceled the policy if Familyworks "were licensed on August 16th, 2018, to operate by the State," Ms. Burton answered: "I'm not sure. I'd have to review the file again." *Id*., 67:18–24. Based on Ms. Burton's initial statement that ProAssurance would *not* have issued the 2018–2019 Policy, as well as her subsequent

decision with respect to indemnification is premature, Familyworks' motion for summary judgment will be GRANTED with respect to defense coverage under the Professional Liability Coverage Part and DENIED with respect to indemnification. All related evidentiary motions and objections will be found as moot.

## V.     Recovery Under Both Coverage Parts

Finally, the Court turns briefly to ProAssurance's argument that coverage is not available under both the General Liability and Professional Liability Coverage Parts. ProAssurance provides no legal authority for this argument, but asserts that neither Higgins nor Familyworks has cited another case in which a court found coverage under both the General Liability and Professional Liability parts of a professional liability policy. ECF Nos. 62 at 20; 76 at 14.

Nothing in the plain language of the policies forecloses the possibility of coverage under both coverage parts,[24] and ProAssurance has not provided legal argument to the contrary. The Court therefore declines to deny defense coverage on this basis.

## CONCLUSION

In light of the foregoing and as set forth above, IT IS ORDERED as follows:

---

equivocal testimony that she did not know and/or would have to review the dates, the Court would be unlikely to determine that no "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, as explained above, the Court need not and does not decide the question at this time.

On the other hand, though no party has yet advanced this argument, the Court is not entirely convinced that Familyworks' failure to report a licensing limitation under the 2017–2018 Policy will support a remedy of rescission with respect to the subsequent 2018–2019 Policy. Again, however, the question lies beyond the scope of ProAssurance's duty to defend and therefore beyond the scope of the present decision.

[24] The Court notes that Exclusion (O) of the Professional Liability Coverage Part unambiguously excludes coverage for "[b]odily injury or property damage arising out of an occurrence for which an insured is afforded coverage under the General Liability Coverage Part of *this policy*." ECF No. 100 at 26 (emphasis added). Because no claims were reported during the policy periods in which the alleged sexual abuse occurred, Exclusion (O) has no application to the present coverage dispute.

Defendant Rachel Higgins' Motion for Summary Judgment (ECF No. 52) is **GRANTED IN PART** and **DENIED IN PART**;

Defendant Familyworks, Inc.'s Motion for Summary Judgment (ECF No. 72) is **GRANTED IN PART** and **DENIED IN PART**;

Defendant Familyworks, Inc.'s Federal Rule of Civil Procedure 56(d) Request to Defer Ruling (ECF No. 56); Plaintiff ProAssurance's Opposition to Familyworks' Partial Joinder in Rachel Higgins' Motion for Summary Judgment (ECF No. 63); Plaintiff ProAssurance Specialty Insurance Company, Inc.'s Evidentiary Objections (ECF No. 77); and Defendant Familyworks, Inc.'s Motion to Strike (ECF No. 85) are **FOUND AS MOOT**.

IT IS FURTHER ORDERED that this case is **STAYED** pending resolution of the underlying state court actions. Defendant Familyworks, Inc., shall file a notice with the Court upon resolution of all underlying state court actions, along with the full state court complaints and any documents pertaining to the resolution of, or findings in, each case. The Court will allow an opportunity for further limited briefing at that time.

**IT IS SO ORDERED.**

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE